*314
 
 Pearson-, J.
 

 One McKenzie died in 1830, intestate, leaving him surviving, a widow and a child. One Jennings administered, and soon afterwards died. At October Term, 1831, one Wilson who had married the widow, took out letters of administration de
 
 bonis non
 
 and executed a bond with the plaintiff and the defendant as his sureties. Wilson took the estate of McKenzie into possession made sales, &e., &c., and died in 1835, intestate. The defendant then became his administrator, and also the administrator
 
 de bonis non
 
 of McKenzie and
 
 joadd over to the widow some
 
 $4000
 
 as hew distributive share of the estate of
 
 MeKenzie,
 
 her f/rst husband.
 
 Af-terwards the daughter of McKenzie, who had married one Wyatt, brought suit against the plaintiff and the defendant as the sureties of Wilson on his administration bond, and they compromised by paying the sum of some two thousand dollars and taking releases in full. The defendant made the payment to Mrs. Wilson, under the advice of counsel that by sur-vivorship she was entitled to a distributive share of the estate of her first husband, and that there had been no act on the part of Wilson, the second husband, by which he had so reduced the chose in action, into possession as to-make it his own, and exclude her right. The effect of this payment to the widow was to leave the estate of Wilson in arrear some four thousand dollars: and when Wyatt and wife sued the plaintiff and defendant as sureties on the administration bond, of Wilson, with a full knowledge of the fact that this payment had been made to the widow, and under the belief which was honestly entertained on the part of both the plaintiff and the defendant, that Wyatt and wife, would be able to effect a recovery for some large amount, they entered into the compromise as stated above.
 

 The plaintiff as he alleges has since discovered that the defendant made the payment to the widow in his owu wrong : and that in fact, and according to law, the estate of Wilson was entitled to a credit to that amount by force of his marital
 
 *315
 
 rights, lie having appropriated and made use of the amount due his wife as distributee of her first husband, and which had come to his hands as administrator: and that if the proper credit had been given to the estate of 'Wilson, there would have been nothing in arrear for which he and the defendant could have been made liable as sureties on the administration bond. The prayer is that the defendant be made to pay back to the plaintiff, the sum which he was induced to pay Wyatt and wife for the purpose of affecting the compromise.
 

 The defendant says that when he made the payment to the widow, he believed she was entitled to receive the amount: that he acted under the advice of learned counsel: did not expect to make anything by it, in one way or another, and acting under the impression that the payment to the widow was correct, he informed the plaintiff, his co-surety that their principal was in arrear for a largo sum, and they agreed to make an offer to compromise by paying some two thousand dollars, which was accepted, and releases and receipts in full were passed on all sides, and matters as he had supposed, finally disposed of, by a loss on his side of some $1100 in as much as the estate of Wilson upon which he administered with a view of saving for himself, and the plaintiff, turned out to be insolvent.
 

 We are inclined to the opinion that after the second husband, as administrator of the first, had reduced the funds into possession and had control of them from 1881 to 1835, during which time he applied to his own
 
 private purposes
 
 the part of the fund to which his wife was entitled, it was in law, an appropriation by him, and such a
 
 “
 
 reducing into possession
 
 ”
 
 as excluded the claim of the wife by survivorship, although her second husband, as administrator of her first husband, made no settlement: paid over nothing to the guardian of the daughter, who was the other distributee, and in fact left a large debt outstanding against the estate, which was after-
 
 *316
 
 ■wards paid by the defendant, as administrator
 
 de bonis non
 
 of McKenzie. Árrington v. Yarborough, ante 75, Mardree v. Mardree, 9 Ire. Rep. 295.
 

 ■ Admit that the defendant made the payment to the widow, under a mistake as to her rights: probably after he had been sued, and compelled to pay the same over to the daughter, he had a good cause of action against the widow, to recover the amount from her, as money paid by a mistake, and possibly the plaintiff, who had also become implicated in the matter, and paid some eleven hundred dollars to get out of it, might have been entitled to join with the defendant in calling upon the widow to refund and thereby correct the mistake. But we can see no principle of law or equity by which he has a 'right to call upon his co-surety (who has suffered to the same extent, without any prospect of gain) to bear the whole loss, resulting from a compromise, which was made and entered into by them, deliberately, with a full knowledge of all the facts, and with the mutual and confident belief that it was the best they could do under the circumstances. Nothing short of a fraudulent concealment from the plaintiff, his co-surety by the defendant, of the fact that he had made the payment to the widow, (and there is no allegation of such a fraud) could entitle the plaintiff to the equity he insists
 
 on;
 
 that is, that the defendant shall pay back the amount that he paid in pursuance of the compromise, so as to put the whole loss upon .the defendant, resulting from the supposed mistake in regard to the rights of the widow, as to which the plaintiff had as full information as the defendant, before he entered into compromise.
 

 Bill is dismissed with costs. " Decree accordingly.